298 So.2d 716 (1974)
James TONEY
v.
STATE of Mississippi.
No. 47609.
Supreme Court of Mississippi.
August 12, 1974.
*717 Charles R. Holladay, Picayune, for appellant.
A.F. Summer, Atty. Gen., by Karen Gilfoy, Sp. Asst. Atty. Gen., Jackson, for appellee.
INZER, Justice:
Appellant James Toney was indicted, tried and convicted in the Circuit Court of Pearl River County of the crime of assault and battery with intent to kill and murder Cleveland McQueen. He was sentenced to serve a term of three years in the State Penitentiary. From this conviction and sentence he appeals. We reverse and remand.
On Friday night September 29, 1972, at about 10:30 p.m. appellant, who was a Vietnam veteran, George Perkins, Marie Williams, Mack Taylor and Georgia Mae Terrell, all of the black race, decided to go to the Twilight Inn located just north of Picayune to get something to eat. This is the only eating place in Picayune that is open at night. It appears from the record that the Twilight Inn is a combination cafe and pool room. The cafe part has tables and a counter for people who desire food with sufficient space for two pool tables in the back part of the cafe. There is a back room with an entrance where it appears that black people were expected to go to be served. When the party reached the Inn, appellant, Mack Taylor and George Perkins went into the front part of the cafe. Georgia Mae Terrell went around to the back where she said she was accustomed to go for service. Marie Williams remained in the pickup truck. When the three black men entered the cafe, they went to the counter and sat down on stools. There had been a ballgame that night and the cafe was crowded. Shortly thereafter Cleve McQueen, who had stepped outside to talk to someone, reentered the cafe. He walked up to appellant and told him he was in his seat. According to the testimony of McQueen appellant made no comment and immediately moved from the stool where he was sitting to another one. McQueen said that while the blacks were sitting there, he heard someone behind him say to the blacks, "You can get served in the back." He did not know who made the remark. In any event the blacks did not get served, and McQueen said he did not know when they left the counter. McQueen testified that after a short lapse of time he started to go home and when he reached the door he looked up and saw appellant who was right at him. He said appellant had a knife in his hand and that appellant stabbed him and ran. McQueen then got out his knife and started running after Toney. He said he struck at him with his knife but did not think he hit him. When Toney reached the pickup truck, he reached into the truck and got a rifle that McQueen thought was a shotgun. Toney pointed the gun at him without saying anything. McQueen then hollered to the people behind him, "You all stay back, he has a shotgun." Appellant then immediately got into the truck with two other members of the party and drove away. McQueen went to the hospital for treatment of his wounds. He had a stab wound in the abdomen and was required to remain in the hospital for eight days for treatment. McQueen's version of the incident was verified by three other witnesses who testified for the state.
Appellant and the men who were with him testified that after they were seated in the cafe, McQueen told appellant, "They *718 are not going to serve you." The blacks made no comment but continued to wait for service. In a few minutes some men with pool sticks in their hands came up behind them. They cursed them and told them they would have to leave and go around to the back. The blacks then became afraid and decided they had better leave. Appellant testified that when they reached the door, Mack Taylor started to open it, someone pushed appellant into the door, and at the same time he felt a sharp pain in his back. Appellant said that while he was trying to get out of the door, he got out his knife and when he looked around he saw McQueen with a knife in his hand. McQueen struck at him with a knife. Appellant stepped back and McQueen missed him. Appellant then made a motion at McQueen with his knife to keep him away. He did not know he had actually stabbed McQueen when he made that motion. He then turned and ran to the truck with a group of people following him. They were cursing and threatening him. When he reached the truck, he got a rifle that belonged to his father, who always kept it in the truck. He then turned and told the men who were following him not to come any closer or he would use the rifle. He and the other members of the party, except Mack Taylor and Georgia Mae Perkins, got in the truck and left. When he reached home he discovered that the sharp pain he felt in his back was in reality a cut that someone had inflicted on him. After his wound was dressed and he had changed shirts, he got back in the pickup truck and went to find out what had happened to Mack Taylor and Georgia Mae Perkins. Shortly thereafter appellant was arrested.
On cross examination appellant was asked by the district attorney if Marie Williams did not tell them that if they went into the front part of the cafe there would be trouble, and that as a result of this warning they then armed themselves with knives and went into the front part of the cafe. Appellant admitted that Marie Williams did tell them that if they went into the front part of the cafe there would likely be trouble, but he denied that he armed himself with a knife because of this statement. He said that the knife that he had was an ordinary knife that he used when hunting and fishing. Appellant, of course, was justified in believing that he had a right to enter the front of the cafe to be served with food without causing any trouble.
Appellant's version of what happened was substantiated in material particulars by the other members of the party, including Marie Williams who remained in the truck. She testified that while in the truck she heard someone outside of the cafe say in a loud voice, "he was going to kick him a nigger." She then got out of the truck and went up to the window of the cafe to see what was happening. As she stood there looking she saw Toney and the others get up to leave. When they attempted to leave a number of people got up and followed them. One of them pushed Toney into the door and cut him in the back with a knife. As Toney and the others came out the door one of them told her to run, which she did. When she reached the walkway going to the back she stopped and looked around. She saw a man with a knife chasing Toney and heard him say, "Oh! Oh! Black boy I'm going to kill you now." When Toney got the rifle and the man backed away, she ran to the truck and she, George Perkins and appellant got into the truck and immediately left. She said that when they reached home, Toney was bleeding and after he removed his shirt, she cleaned and dressed the cut place on his back.
Appellant assigns several grounds for reversal of this case, but we will only discuss those which in our opinion merit discussion. It is first contended that the trial court was in error in refusing to sustain appellant's motion to strike all remarks of the district attorney concerning flight of the witnesses for the appellant and the reference of the district attorney which insinuated that appellant and his witnesses had perjured themselves when testifying on a *719 motion for continuance. It appears from the record that on the day before this trial, the court heard appellant's motion for continuance, based on the absence of material witnesses. On this motion appellant and several witnesses testified relative to the absence of Mack Taylor and Georgia Mae Terrell. The motion for continuance was overruled and when the case was called for trial the next day, the absent witnesses were present in court. Georgia Mae Terrell was called as the first witness for the appellant. On cross examination the district attorney sought to bring out that immediately after this incident Mack Taylor had left Pearl River County. An objection was made by appellant, and it was sustained by the court. Thereupon the district attorney stated in the presence of the jury, "Your Honor, she is on cross examination and I think that flight from the area would be important. And if there are some witnesses who have perjured themselves on previous testimony taken on yesterday, I think that should be brought to light." The court then stated, "That would have to be taken out of the presence of the jury. Let's go into another line of questioning." In spite of this statement by the court the district attorney continued to question the witness relative to her flight and that of Mack Taylor. The court sustained the objections to the questions and appellant then asked that the jury be retired and out of the presence of the jury moved the court to strike the remarks of the district attorney and his question concerning flight of witnesses. Appellant also requested the court to instruct the jury that they were not to consider the remarks made by the district attorney. The district attorney resisted the motion and asked that the record made on the motion for continuance be made a part of the record in this case. The court granted the request of the district attorney and overruled appellant's motion to strike and refused to instruct the jury to disregard the statement of the district attorney. When Mack Taylor was called as a witness for appellant, the district attorney questioned him at length as to when and why he left Pearl River County immediately after the incident. Finally, when the witness was asked if he came back and picked up Georgia Mae Terrell, appellant objected on the ground that the testimony had nothing to do with the case then being tried. The court overruled the objection.
The questions asked by the district attorney and his remarks relative to some witnesses having perjured themselves by testimony taken on the motion for continuance amounted to an attempt to impeach appellant and his witnesses in an improper manner. The remarks in the presence of the jury were improper and prejudicial and the court should have instructed the jury to disregard these remarks and the district attorney should have been required to refrain from his attempt to impeach appellant's witnesses in an improper manner. Mack Taylor was not charged with any crime and the fact that he left Pearl River County shortly after this incident was immaterial and had nothing to do with guilt or innocence of the appellant. While it is proper for the district attorney to investigate to determine whether a witness or witnesses have testified falsely in a proceeding, it is not proper to do so in the trial of another proceeding to the prejudice of the accused then on trial. The state urges that the error, if any, was not prejudicial and therefore harmless. However, under the facts and circumstances of this case, we are of the opinion that this error was prejudicial.
Appellant also contends that the trial court was in error in granting Instruction No. 4 for the State which is in the following language:
The court instructs the jury for the State of Mississippi, that while malice aforethought is a necessary ingredient to the crime charged, still "malice aforethought" means the same thing as cutting a human being with a deadly weapon with the deliberate design to effect the death of any human being; and this *720 malice aforethought and deliberate design do not necessarily mean hatred or illwill, and need not exist in the mind of the defendant for any definite time, not for days or hours or even minutes, but if the deliberate design to kill exists but for an instant at the very time the deadly weapon is used, this is sufficient premeditation and deliberation to constitute "malice aforethought."
We have recently had the occasion to analyze and discuss this instruction in two cases and have condemned it. In Pittman v. State, Miss., 297 So.2d 888 (decided July 15, 1974), which was a murder case, wherein a similar instruction was granted we stated:
The vice of the instruction is that it requires the jury to convict the defendant of murder if it finds that premeditation or deliberate design to kill the deceased existed at the time the killing occurred. The instruction fails to inform the jury that there are instances in which a deliberate design to kill may exist at the moment the fatal blow was struck and yet the homicide may be justifiable or excusable. Mississippi Code Annotated section 97-3-15 (1972), lists eight situations under which homicide is justifiable, and Mississippi Code Annotated section 97-3-17 lists three situations under which homicide is excusable. In addition thereto, the deliberate design to kill might exist and the killing be manslaughter. This instruction pared away the rights of the defendant and required the jury to find him guilty of murder even though the killing might have been justifiable by reason of self-defense. One may have a deliberate design to kill and yet not be guilty of murder. (Emphasis added).
All justices are of the opinion that this instruction is erroneous and should not have been granted in this case. However, the record fails to show that appellant objected to the instruction as required by Mississippi Supreme Court Rule 42, (1967). A majority of the Court is of the opinion that due to the facts and circumstances of this particular case, it is one of those extreme cases where the court should of its own motion raise an objection to the instruction to prevent a manifest injustice. It cannot be said in this case that the instruction, when read together with the other instructions, was harmless since the court refused the only two instructions offered by the appellant dealing with self-defense. Although these two instructions were properly refused in the form in which they were requested, the fact remains that the foregoing instruction could have led the jury to believe that appellant did not have the right to act in self-defense.
Appellant also urges that the testimony on behalf of the state is insufficient to support the charge of felonious intent to kill and murder with malice aforethought. It is argued with considerable merit that the evidence simply does not show that appellant had any intent to kill Cleve McQueen. It is argued that any such intent is negated by the fact that if appellant had such an intent he could have very easily shot McQueen at a time when McQueen was coming toward him with a knife. On the other hand, the state argues that the evidence was in conflict as to who was the aggressor, the jury could find from the evidence that appellant made an assault on McQueen with a knife at a time when McQueen was unarmed, and the jury could properly infer from the use of a deadly weapon that appellant intended to kill McQueen. A majority of the court is of the opinion that this was a jury question and for this reason there is no merit in this assignment of error. However, Chief Justice Gillespie and Justice Smith are of the opinion that the evidence on behalf of the state taken in its entirety is not sufficient to show an intent to kill and murder. The state brought out the fact that the appellant had stabbed McQueen. After being stabbed McQueen chased appellant with a knife. Appellant secured the rifle yet made no attempt to do anything except to *721 keep McQueen from attacking him. They are of the opinion that this was one continuing incident, and the evidence on behalf of the state actually overcomes any inference that the appellant intended to kill McQueen. Justice Sugg is of the same opinion, but he is of the opinion that the conviction of appellant should be affirmed as to assault and battery and remanded for a proper sentence.
After a careful review of the whole record in this case and in the light of the errors noted, we can not say with confidence that appellant received a fair and impartial trial. Consequently, this case should be and is reversed and remanded for a new trial.
Reversed and remanded.
All Justices concur, except BROOM and WALKER, JJ., who dissent.
BROOM, Justice (dissenting):
Here the majority of the Court reversed a conviction upon a criminal charge in order "to prevent a manifest injustice." I would affirm because such an injustice does not appear to be demonstrated.
The majority opinion deals considerably with remarks and questions of the district attorney concerning flight of witnesses from Pearl River County together with his remarks relative to some of the witnesses having perjured themselves on the hearing of a motion for continuance. According to the court's opinion such error by the district attorney was prejudicial. While it is true that the questions asked by the district attorney on the subject of flight may not have been entirely appropriate, my opinion is that his reference to flight did not reach the proportions of reversible error. This is especially true in this case where the presiding judge sustained defense counsel's objections to such remarks every time objection was made. Outside the presence of the jury trial judge overruled a motion to instruct jurors to ignore questions propounded by the district attorney on the issue of flight.
It is easy for an appellate court to say that the action of a trial judge in such a situation is reversible error. My opinion is that considerable latitude should be accorded the trial judge who no doubt in this instance was of the opinion that having sustained the objections he had rectified the error. He obviously reasoned that the error would be accentuated and worsened by any further reference to the matter within the hearing of jurors. Be that as it may, it is not logical or likely that the jurors faulted or blamed appellant for any removal or flight from the jurisdiction on the part of any witness absent any suggestion that the appellant was connected with such flight.
Reversal seems also to be based in part on the granting of a state's instruction by the trial court. Admittedly the instruction is erroneous. However, according to the record, no objection to the instruction was made at the trial and yet the error has been noted by this Court of its own motion. Careful study of all the instructions given for both sides reveals that it is not apparent or even likely that the jurors were misled or misguided by the defective instruction. As this Court has often stated, we should look at the totality of the instructions and, when considered in their entirety, there is no reversible error unless it is likely that a defective instruction resulted in an improper verdict. In the present case it appears that the jurors could not have been led to believe that they could find the appellant guilty of the felony charged against him if they believed that he acted in self-defense. To say that the erroneous instruction should be considered by this Court defeats the very practical purpose of the circuit judges who adopted the rule applicable here. The rule is that erroneous instructions must be objected to at the trial, and the objections made to appear in the record before they can be argued on appeal. This Court has *722 upheld the rule in the following cases: Standard Furniture Co. v. Wallace, 288 So.2d 461 (Miss. 1974); Berry v. State, 288 So.2d 457 (Miss. 1974); Jones v. State, 279 So.2d 594 (Miss. 1973); Gaines v. State, 272 So.2d 919 (Miss. 1973); Malley v. State, 271 So.2d 448 (Miss. 1973); Maness v. Illinois Central R.R., 271 So.2d 418 (Miss. 1972); Ferrill v. State, 267 So.2d 813 (Miss. 1972); Moore v. State, 264 So.2d 414 (Miss. 1972); Clark v. State, 260 So.2d 445 (Miss. 1972). Our departure from the rule permits lawyers to sandbag trial judges and to employ strategy which they can later urge as error if the strategy backfires and ultimately works to the detriment of a client.
The majority correctly rejected an assignment of error to the effect that the testimony on behalf of the state is insufficient to support the charge of felonious intent to kill and murder with malice aforethought. In effect, the majority said that even though the evidence is sufficient to sustain the conviction, the case should be tried again because the court "cannot say with confidence that appellant received a fair and impartial trial."
My study of the entire record leads me to conclude that the trial court appropriately permitted the jury to function so as to resolve a factual question upon conflicting evidence from which the jurors could have found for either the state or the appellant. A quality of rightfulness should be attached to a judgment of a court based upon a jury verdict. It follows that no jury verdict should be disturbed by an appellate court except where it is clear that either the evidence was insufficient, or there was such a malfunction in the trial as to deprive the appellant of a fair trial. In my opinion a careful examination of the record does not indicate any justifiable reason for this Court to logically conclude that the appellant may not have received a fair trial. As we have held before, no litigant in either criminal or civil cases is entitled to a perfect trial. He is entitled to a fair trial, which is what he received in this case so far as is disclosed by the record before us. Another important factor preponderating toward affirmance here is that appellant was vigorously represented by experienced and capable counsel of his own choosing. Under such circumstances I feel that this Court should let the adversary system serve its time tested and proven purpose.
Accordingly, and with considerable reluctance, I have made my dissenting views known because I believe what the majority has done in this case is too much in the nature of an encroachment upon our adversary system.
WALKER, J., joins in this dissent.