379 So.2d 529 (1980)
Doris Brown WALL
v.
STATE of Mississippi.
No. 51567.
Supreme Court of Mississippi.
January 23, 1980.
Rehearing Denied February 20, 1980.
John R. Poole, Jackson, for appellant.
A.F. Summer, Atty. Gen. by Marvin L. White, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROBERTSON, LEE and BOWLING, JJ.
LEE, Justice, for the Court:
Doris Brown Wall was indicted, tried and convicted in the Circuit Court of Walthall County for the murder of Alvin Randall, *530 and was sentenced to a life term in the Mississippi State Penitentiary. She appeals from the judgment of the lower court and assigns the following errors in the trial below:
(1) The court erred in overruling appellant's motion for new trial on the ground that the jury verdict was against the overwhelming weight of the evidence.
(2) The court erred in giving State's Instruction S-12.
(3) The court erred in permitting over objection proof of other crimes.
Appellant was convicted on the testimony of Erma Randall, 48-year-old widow of the deceased, and Leroy Dillon, a 13-year-old boy. Mrs. Randall resided in Tylertown, Mississippi, with her husband, Alvin Randall (victim) and Leroy Dillon resided in nearby Kentwood, Louisiana. They had been acquainted with each other for approximately twelve (12) months and frequently met at the Tic-Tock Lounge, a tavern in Kentwood operated by appellant. Dillon swept the floors and did odd jobs around the establishment. Mrs. Randall had also been acquainted with appellant for approximately five (5) or six (6) years. She frequented appellant's tavern and was on friendly terms with her. The testimony of Mrs. Randall and Leroy Dillon is substantially as follows.
The appellant talked with Erma Randall on a number of occasions about her husband, Alvin Randall (domestic trouble between the Randalls), inquired as to how much and what kind of property Randall owned, and suggested that she should kill Randall. Appellant talked with Leroy Dillon, planned the murder of Randall and instructed Dillon in detail how the murder should be executed. She told Mrs. Randall that Dillon had agreed to kill Randall.
On the afternoon of December 30, 1977, Mrs. Randall picked up Leroy Dillon in Kentwood at appellant's tavern, transported him in her automobile to a point near her home in Tylertown, where she let Dillon out of the automobile. They arrived there just before dark. The plans were that when darkness fell, Mrs. Randall would go out on the back porch, pretend to feed her dog, and leave an automatic shotgun, three (3) shot-gun shells, a rag and gloves on the porch. The rag and gloves were for the purpose of preventing and removing fingerprints. This was the signal for Dillon to come to the porch, obtain the mentioned articles and, after Mrs. Randall had returned into the house and gone to bed, Dillon would open and shut the car door outside to attract the attention of Mr. Randall. When Randall came to check upon the disturbance, Dillon would shoot him three (3) times.
After Dillon moved a distance away into the darkness, Mrs. Randall went back into the house and told her husband she was going to bed. It was approximately 8:00 p.m. She heard the car door slam, Mr. Randall got up, put on a pair of trousers and slippers, turned the porch light on, and walked out to determine the cause of the noises. At that point, Dillon shot him one (1) time in the lower chest with the shot-gun. Randall fell to the ground with his head pointing west toward the house and his feet at the edge of the driveway. Dillon was frightened and did not fire the other two (2) rounds. Mrs. Randall came outside to the driveway, felt the pulse of her husband, and, when Dillon told her he could not find the empty shell hull which had been ejected from the gun, obtained a flashlight, and they searched for, and discovered, the spent shell. Mrs. Randall then got into her car with Dillon and drove back to appellant's tavern in Kentwood. When they arrived at the tavern, appellant asked them whether Randall was dead. Mrs. Randall said no, and Dillon said yes. Appellant told Dillon to throw the empty shell hull across the highway near the tavern. She took the shotgun and said she would throw it in the river. Dillon and Mrs. Randall claimed that appellant said she would kill them, if they didn't kill Randall.
Mrs. Randall returned to her home in Tylertown, telephoned Mr. Batson Brumfield, a relative, and reported that something was wrong with her husband. Brumfield came to the house, found Mr. Randall *531 dead (on the ground) and telephoned the sheriff, who came to the scene and began to make an investigation of the homicide. Deputy Sheriff Jim Smith and Mississippi Highway Patrolman Donald Butler assisted in the investigation. On December 31, 1977, the day after the homicide, Patrolman Butler interviewed appellant at the Tic-Tock Lounge for the purpose of checking Mrs. Randall's alibi. His testimony follows:
"When I arrived in Kentwood and talked with Mrs. Brown, I asked her about whether or not Mrs. Erma Randall had been down there that previous afternoon. She stated she had left her about an hour before sundown, and I asked her if she knew about the death of Mr. Randall, and she stated that someone had called her and told her. She stated she knew Boots Randall; that he had come in there several weeks previous; had a woman with him, and that he had mistreated Miss Erma and she was glad that the SOB was dead."
Deputy Sheriff Smith testified that he saw appellant on January 5, 1978, and that when he told her about Randall having been killed, she said she knew about it and that he should have been killed. Further, he asked her, if she knew who did it, and appellant said, "You'd better check out that sorry damned son-in-law of theirs, they've had trouble for years over them kids." On February 15, 1978, after questioning Dillon, the boy admitted to the officers his part in the crime, took them to the place where he had thrown the empty shell hull and Deputy Sheriff Smith found it there.
Appellant denied any connection with, or knowledge of, the homicide. She admitted that she told Deputy Sheriff Smith that Mrs. Randall's son-in-law probably killed Randall. She denied that she told Patrolman Butler on December 31, 1977, that someone had called her and told her of Randall's death and that she knew Mr. Randall. She stated that the first time she knew of his death was when Patrolman Butler informed her about it and that she had never seen Randall. Those are the contradictory statements attributed to appellant. She testified that she had never been in the Randall house. Mrs. Randall said that appellant told her on one occasion that she had driven by the house. There is no evidence of any overt act or any circumstance connecting appellant with the crime. It is undisputed that, at the time of the homicide, appellant was in the company of another individual(s).
Erma Randall entered a plea of guilty to manslaughter, was sentenced to serve a term of twenty (20) years in the state penitentiary, and was told that she would be eligible for parole in approximately six (6) years. The record does not reflect any action taken against Leroy Dillon. The briefs indicate that no proceeding of any kind was instituted against him.

I.
Was the verdict of the jury against the overwhelming weight of the evidence?
Although persons may be convicted of crimes on the uncorroborated testimony of accomplices, such testimony is to be viewed with great caution and suspicion. In Thomas v. State, 340 So.2d 1 (Miss. 1976), in discussing the principle, this Court said:
"The law is settled in this state that the uncorroborated testimony of an accomplice will support a guilty verdict, but the rule requires that such uncorroborated testimony should be viewed with great caution and suspicion and that it must be reasonable and not improbable or self-contradictory or substantially impeached. Black v. State, Miss., 336 So.2d 1302, handed down September 7, 1976; Hutchins v. State, 220 So.2d 276 (Miss. 1969); Cole v. State, 217 Miss. 779, 65 So.2d 262 (1953)." 340 So.2d at 2.
The bizarre facts of this case cause us to distrust and suspect the testimony of the two admitted murderers and accomplices. However, in view of our decision on the second assignment, we do not now say that such testimony is incredible or unreasonable.

II.
Did the trial court err in granting State's Instruction S-12?
*532 The Instruction S-12 states: "The Court instructs the jury that under the laws of the State of Mississippi, proof of motive is not essential to a conviction for felonious homicide."
Motive is not required to be shown in order for a conviction of crime to be upheld. However, the above instruction is an abstract instruction on the law and should not be given. Kitchens v. State, 300 So.2d 922 (Miss. 1974): People v. Rivera, 32 Ill. App.3d 500, 336 N.E.2d 255 (1975); 23A C.J.S. Criminal Law § 1198, at 507 (1961). The instruction was prejudicial to the appellant and well could have confused the jury into returning a guilty verdict after having been told by the court that motive was not required to be shown. There was no motive indicated in the case.
Appellant made no objection to the instruction and, under Rule 42, Miss.Sup.Ct. Rules, the error will not be considered on appeal, except that in extreme cases, this Court may raise an objection to a jury instruction in order to prevent manifest injustice. We are of the opinion that on the close facts of this case, where appellant was convicted solely on the testimony of the deceased's wife and a 13-year-old boy, admitted murderers and accomplices, justice requires that the case be reversed for another trial.
The record indicates that when appellant left for The Pines lounge on the evening of the homicide, Dillon, Mrs. Randall and Leon Zeigler were present and, upon her return to the Tic-Tock Lounge, Mildred Fluker, her cleanup woman was there. This was approximately 11:00 p.m. and well after the time when Mrs. Randall and Leroy Dillon testified they returned to the Tic-Tock Lounge and were met there by appellant. Also, appellant testified that when she was informed of the death of Mr. Randall by Patrolman Butler, she telephoned Erma Randall in the presence of one Bill Gray. None of those persons testified. It would be beneficial on a retrial for the court and jury to know whether Mildred Fluker, Leon Zeigler and Bill Gray corroborate the testimony of appellant.

III.
Did the trial court err in admitting evidence of other crimes over appellant's objection?
Appellant contends testimony of Dillon and Erma Randall that appellant permitted Dillon to drink and sell beer in the Tic-Tock Lounge was evidence of other crimes committed by appellant and was error. Such conduct of Dillon was closely intertwined to the relationship between Dillon and appellant and there is no merit in such assignment.
For the reason stated, the judgment of the lower court is reversed and the case is remanded for a new trial.
REVERSED AND REMANDED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and BOWLING and COFER, JJ., concur.
BROOM, SUGG and WALKER, JJ., dissent.
BROOM, Justice, dissenting:
Concurrence here by me is withheld because (1) the evidence adequately supports the conviction, and (2) reversal is unwarranted by the faulty jury instruction not objected to at trial.
Reversal is partly based upon the fact that the appellant was convicted "solely on the testimony of the deceased's wife and a 13-year old." In effect, the majority assumes the role rightly belonging to jurors and says that no credence will be placed upon the testimony of these two state's witnesses. Heretofore, the rule which we have generally followed is that credibility, weight and worth of the testimony of witnesses should be decided by the jury and not this Court. We said so in olden times and as recently as December 19, 1979, when this Court in Davis and Brooks v. State, 377 So.2d 1076, 1079 speaking through Patterson, C.J., in a well-reasoned opinion, stated "the jury's resolution of credibility issues will not be upset by this Court on review" (citing numerous cases). Speaking through *533 Patterson, C.J., in Whittington v. State, 377 So.2d 927 handed down the same date, we held the same thing (again citing numerous cases). Now, just a month later in the instant case, the majority opinion as written states the "bizarre facts of this case cause us to distrust and suspect the testimony" of certain state's witnesses (emphasis added).
In the instant case the jury was precisely instructed to view the testimony of the state witnesses Dillon and Mrs. Randall with suspicion and great caution. After hearing all of the witnesses present their testimony, and having observed their demeanor and attitude, the jury accepted Dillon's and Mrs. Randall's testimony, and rejected the defendant's substantially impeached testimony. From my study of the record, I cannot agree that the state's case consisted merely of Dillon's and Mrs. Randall's testimony. A law officer in the case (Deputy Smith) testified that he interviewed the defendant after the killing, and she said the deceased should have been killed. Another officer (Patrolman Butler) interviewed the defendant during the investigation and according to Butler, the defendant told him: someone had called her and told her about Mr. Randall's death, and that she was glad the SOB was dead. At trial she denied having made these statements. Additional evidence against the defendant included the spent shot-gun shell found near her Tic-Tock Lounge.
Part II of the majority opinion states that the lower court should not have instructed the jury that "... under the laws of the State of Mississippi, proof of motive is not essential to a conviction for felonious homicide." Although no objection was made to the faulty instruction below, the majority bases reversal partly on the instruction.
In this case, I think it is highly improper for the Court to even in part base its reversal upon the instruction not objected to at trial. According to our Rule 42, Mississippi Supreme Court Rules, no objection having been made at trial, the issue is not properly to be considered on appeal. In basing reversal on the instruction, this Court is departing from prior decisions of the Court and refusing to abide by our own Rule 42, supra. As well stated by Mr. Justice Smith, writing for the Court in Entrican v. State, 309 So.2d 851 (Miss. 1975), "alleged defects ... not pointed out to the trial court" should not be considered here.
Bell v. State, 360 So.2d 1206 (Miss. 1978) upheld a death penalty in spite of the fact that at the trial level two erroneous instructions were given, both of which contained misstatements of the law. There this Court considered the errors of granting the palpably erroneous instructions as harmless error, and affirmed Bell's death sentence. Faulty Bell instructions having been considered as harmless error where the death penalty was involved, logically the instruction in the present case (not death penalty) is much more to be considered as harmless error.
Reversal is contrary to all of the cases cited above and in my judgment not warranted upon the record. Here where no death penalty is at issue, the Court is applying a much more stringent standard to a jury instruction than was done in Bell where the Court affirmed a death sentence. Acting upon a cold record, the majority has judicially decided to "distrust" the state's testimony although the trial judge and jury accepted the testimony as true.
In my view, by the majority action, this Court here: elected not to follow its own case law; refused to abide by its own rules; and although the case presents a calloused killing, assumed the role of an advocate and reversed a distinguished trial judge upon an issue (the faulty jury instruction) not argued below. A fair trial was accorded the defendant, and my conclusion is that no reversible error has been shown. Accordingly, I must dissent.
SUGG and WALKER, JJ., join this dissent.