487 So.2d 1304 (1986)
Neal GRAY and Charles Allen Nations
v.
STATE of Mississippi.
No. 55441.
Supreme Court of Mississippi.
April 23, 1986.
W.M. Conerly, Vicksburg, F. Kent Stribling, Hugh Cunningham, Jackson, for appellants.
Edwin Lloyd Pittman, Atty. Gen. by Catherine Walker Underwood and Wayne *1305 Snuggs, Asst. Attys. Gen., and Leyser Q. Morris, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and DAN M. LEE and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
Neal Gray and Charles Allen Nations were jointly tried and convicted in Yazoo County Circuit Court of conspiring to distribute more than one kilogram of marijuana. Gray was sentenced to twenty (20) years, with two (2) years suspended, and fined $100,000.00. Nations was sentenced to twenty (20) years, with five (5) years suspended, and fined $25,000.00.
Both men, along with four others, were indicted for conspiring, in violation of Mississippi Code Annotated § 97-1-1 (Supp. 1985), to distribute more than one kilogram of marijuana, the object of that conspiracy being a felony in violation of Mississippi Code Annotated § 41-29-139(a)(1) and (b)(1) (Supp. 1985).
Nations has already been convicted of the sale of this marijuana and sentenced to a term of eight (8) years, with four (4) years suspended, in the Department of Corrections. Nations v. State, 481 So.2d 760 (Miss. 1985).
Gray has also already been convicted of the same sale and sentenced to a term of twenty (20) years, with ten (10) years suspended. Gray v. State, 481 So.2d 763 (Miss. 1985).
On the evening of March 3, 1983, in Satartia, Yazoo County, Mississippi, two undercover agents for the Mississippi Bureau of Narcotics, Norman Willingham and Eddie Berry, arranged to buy 50 pounds of marijuana from Donald Lungrin and his associates, among whom were Earl Harris, Neal Gray and Allen Nations. Final arrangements for the sale were completed at Lungrin's mobile home and the exchange of the drugs and the purchase money was to take place at a dump site where the drugs had been stashed. Gray was supposed to watch the transfer from the woods, while Harris was to actually carry it out. At the moment of sale, the agents arrested Harris and sought Gray. Nations, Lungrin and others were later arrested at Lungrin's mobile home. Gray was arrested the next day at his home.
Harris and Lungrin pled guilty to the conspiracy, and Gray and Nations were set for trial on November 15, 1983.

A.

JOINT ASSIGNMENTS OF GRAY AND NATIONS

I.

WAS IT PLAIN ERROR TO GRANT INSTRUCTIONS S-1 AND S-2?
The two instructions complained of are as follows:

JURY INSTRUCTION NO. S-1
The Court instructs the jury that the act of any conspirator is the act of all of the conspirators, and each is responsible for the acts of the others, and if you believe from the evidence in this case beyond a reasonable doubt that an agreement or understanding to distribute Marijuana existed on March 3, 1983 in Yazoo County, Mississippi, and that Neal Gray and Allen Nations knowingly participated in said agreement or understanding, or knowingly did any act in furtherance of said agreement, then each is responsible for the acts of the other. (emphasis added to part complained of)
JURY INSTRUCTION NO. S-2
The Court instructs the jury that a conspiracy is an agreement or understanding between two or more people to commit a crime, and if you believe from the evidence in this case, beyond a reasonable doubt, that on or about the 3rd day of March, 1983, there existed in Yazoo County, Mississippi an agreement or understanding between two or more persons to distribute Marijuana in amounts of more than one kilogram, and that Neal Gray and Allen Nations knowingly participated *1306 in, or were knowingly part of, or did any act in furtherance of said agreement or understanding, it is your sworn duty to find them guilty as charged. (emphasis added to part complained of)
Most recently we defined conspiracy in Griffin v. State, 480 So.2d 1124 (Miss. 1985), as follows:
Conspiracy is a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose unlawfully, the persons agreeing in order to form the conspiracy. The offense is complete without showing an overt act in furtherance of the conspiracy. Norman v. State, 381 So.2d 1024 (Miss. 1980); Moore v. State, 290 So.2d 603 (Miss. 1974); Pickett v. State, 139 Miss. 529, 104 So. 358 (1925).
480 So.2d at 1126.
We went on to say,
There must be recognition on the part of the conspirators that they are entering into a common plan and knowingly intend to further its common purpose. McDonald v. State, 454 So.2d 488 (Miss. 1984). If there is an agreement, then knowledge of that agreement follows. The agreement need not be formal or express, but may be inferred from the circumstances, particularly by declarations, acts, and conduct of the alleged conspirators.
Id. See also McCray v. State, 486 So.2d 1247 (Miss. 1986); James v. State, 481 So.2d 805 (Miss. 1985).
In discussing what evidence is admissible in a conspiracy case, we said, "Commission of an offense is admissible as showing the conspiracy, since what the defendants actually did is evidence of what they intended to do." Id. We cited King v. State, 123 Miss. 532, 86 So. 339 (1920), for this proposition. We later said, "[A]ll that must be shown is a concert of free will and conspiracy may be proved by acts of the parties or by circumstances as well as their agreement." Griffin, 480 So.2d at 1127.
From these cases, it can be said that evidence that an alleged co-conspirator did an act in furtherance of a conspiracy is evidence against him that he was a co-conspirator. However, the fact that he did do an act in furtherance of a conspiracy does not per se make him a co-conspirator. See Davis v. State, 485 So.2d 1055 (Miss. 1986).
Instructions S-1 and S-2 appear to allow the jury to find Gray and Nations guilty of conspiracy based only upon acts in furtherance of the conspiracy without requiring a separate finding that they knowingly became part of the agreement to commit a crime. To this extent, they are erroneous.
However, no objection was made by either defendant to either of these instructions. The issue presented then is whether this assignment should be considered in order to avoid manifest injustice.
Rule 42 of the Mississippi Supreme Court Rules provides that objections to instructions are waived if a specific objection to the instruction is not made in the trial court. See, e.g., Billiot v. State, 454 So.2d 445, 462 (Miss. 1984). This is true even if the erroneous instruction deals with elements of the crime. See, e.g., Hull v. State, 350 So.2d 60 (Miss. 1977). It is clear, however, that under Rule 42 this Court may raise an objection to a jury instruction in order to prevent manifest injustice.
In Williams v. State, 445 So.2d 798 (Miss. 1984), the Court stated the general rule first mentioned above and then said the following:
Moreover, the ground relied upon in the assignment of error should be one of the grounds stated in the objection to the lower court... . Perhaps, the best single explanation of the principles undergirding Rule 42 is stated in Rayburn v. State, 312 So.2d 454 (Miss. 1975), wherein the Court stated:
It is essential that specific objections to instructions be made to the trial judge, in order that errors and omissions may be corrected or supplied before any possible harm can result. A defendant may not tacitly reserve an objection at that point, or wait until *1307 after a guilty verdict is returned, meanwhile having availed himself of the chance to be acquitted, or call attention to an omission or error for the first time on appeal in order to have his conviction set aside.
... .
To further the practice of what we consider to be an important and necessary rule, we decline to address this issue on its merits for it is procedurally barred.
Id. at 807-08 (citations omitted).
We now turn to the four cases cited by the appellants as our precedent to exercise our option under Rule 42 on instructions to consider objections which were not made in the trial court. In Wall v. State, 379 So.2d 529 (Miss. 1980), we reversed under Rule 42. However, in Wall, we were faced with an abstract instruction on the law, and Wall was convicted solely on the testimony of two admitted murderers and accomplices. In McGee v. State, 365 So.2d 302 (Miss. 1978), we reversed under Rule 42 because the only instruction given by the state was not supported by the evidence. In McMullen v. State, 291 So.2d 537 (Miss. 1974), we reversed because the instructions were so erroneous and prejudicial that taken in toto they prevented McMullen from receiving a fair trial. In Toney v. State, 298 So.2d 716 (Miss. 1974), we reversed because we could not say that the instruction, when read together with the others, was harmless since the court refused to give the only two instructions on self-defense offered by the appellant.
We consider these cases readily distinguishable from the situation here, and we do not consider that manifest injustice requires us to exercise our option under Rule 42.
Furthermore, another well-settled principle of Mississippi law concerning instructions points to the conclusion that the giving of the instructions was not reversible error even if we consider the assignment. In McLelland v. State, 204 So.2d 158 (Miss. 1967), this Court said the following:
Appellant also assigns as error the giving of an instruction for the State pertaining to false uttering in that the instruction failed to set out as an essential element that the appellant must have knowingly uttered and published the check with intent to defraud. In Smith v. State, 220 Miss. 67, 70 So.2d 56 (1954) this Court held that the absence from the state's instruction of the necessary element of intent to defraud was cured by the inclusion of all the necessary elements of the crime in the instructions given for the defendant. This Court has held with metronomic regularity that all instructions are to be considered together as a whole and that no error can be predicated upon the failure of one instruction to set out a necessary element of the crime which is included in another instruction. (citations omitted)
Id. at 164. See also Johnson v. State, 475 So.2d 1136 (Miss. 1985); Glenn v. State, 439 So.2d 678 (Miss. 1983); Norman v. State, 385 So.2d 1298 (Miss. 1980).
Instruction D-1, which was granted, is as follows:
INSTRUCTION NO. D-1
A conspiracy is a combination of two or more persons to accomplish some unlawful purpose or to accomplish some lawful purpose by unlawful means. In this case, the State must prove beyond a reasonable doubt, in order to establish proof that a conspiracy existed, is that each defendant in some way or manner, or through contrivance, positively or tactitly came to a mutual understanding to try to accomplish a common and unlawful plan to distribute marijuana as alleged in the indictment.
Before the Jury may find that a defendant has become a member of a conspiracy, the evidence in the case must show beyond a reasonable doubt that the conspiracy was knowingly formed and that each defendant or other person claimed to have been a member, willfully, unlawfully and feloniously conspired, *1308 combined, confederated and agreed to participate in the unlawful plan, with intent to advance or further some object or purpose of the conspiracy to distribute marijuana, and if the state has failed to prove such to your satisfaction beyond a reasonable doubt, it is your sworn duty, as jurors, to return a verdict of "Not Guilty."
Instruction D-4, which was also granted, is as follows:
INSTRUCTION NO. D-4
The Court instructs the Jury that mere presence of a defendant or the association of a defendant with other persons or person engaged in unlawful activities is not within itself sufficient to establish guilt on the part of a defendant.
The Court further instructs the jury that a person who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator.
Before the Jury in this case may find that a defendant, or any other person, has become a member of a conspiracy, the evidence in the case must show beyond a reasonable doubt that a conspiracy was knowingly formed and that the defendants, or other person who is claimed to have been a member, did willfully, unlawfully and feloniously conspire, confederate and agree together and with each other to unlawfully distribute marijuana, and if the State has failed to so prove, it is your sworn duty to return a verdict of "Not Guilty."
When the instructions are read together, it is clear that no error can be predicated upon the failure of instructions S-1 or S-2 to set out properly a necessary element of the crime, as the element was included correctly in instructions D-1 and D-4. Cf. James v. State, 481 So.2d at 812 (clarifying instruction requested by defendant was refused).
There is no merit to this assignment.

II.

SHOULD THE CONVICTIONS BE REVERSED BECAUSE THE JUDGE FAILED TO DECLARE A MISTRIAL AFTER WEAPONS WERE DISPLAYED BEFORE THE JURY BY THE PROSECUTION BUT WERE NOT INTRODUCED BECAUSE THEY WERE NOT RELEVANT?
During the cross-examination of Officer Berry, counsel for Nations sought to show that the purpose of the police operation on the night in question was the arrest of Lungrin, not the arrest of Nations. In that effort, the following exchange took place:
Q But we're talking about when you first met Mr. Nations, when you first went down to the house trailer. I'm asking you why you would go down there not knowing what the setup is?
A I still don't follow you but if we had to go there to make this deal for the fifty pounds of marijuana, then that's what we would do.
Q Well, isn't it good police practice to know the surrounding of a home or a house that you are going into?
A Well, we knew that there was a number of weapons in the residence. We knew that Harris had a .44 Magnum and Lungrin had a sawed off shotgun and several other weapons.
Q But that's his home, isn't it? And he's a pretty big hunter, too, isn't he?
A I don't know.
Q There's nothing wrong with having weapons in the home, is there?
A No, sir, I don't think there is.
Q It's not against the law to hunt with them, is it?
A No, sir.
Q All right, I'm getting back to my question. Isn't it good police practice that before you go into a place, a strange place, to know what's around you?
A Sure, if you have the  if its available to you and you can get that information and check it out, but here we were in Satartia on surveillance in an undercover *1309 capacity and we couldn't just stop somebody on the street and say, "Hey, what's this like down here?" You have to just kind of play it by ear sometimes.
Later, the following exchange was had:
Q These agents that you mentioned, these are just some of them that were there. Isn't that right?
A Yes, sir.
Q They were all armed, wasn't they?
A Yes, sir.
Q A regular little army down there.
A Everybody had a weapon.
Defense counsel then inquired as to the actual arrest when an individual, Ronald Potter, was shot and killed by agents; obviously making clear to the jury that the agents had killed Potter. As an aside, we point out that Potter had been seen earlier that night as an occupant in the truck with Gray. After the bust, Gray's truck was found abandoned next to a dumpster and money was found on the dumpster and in the truck. Potter was killed in a field nearby.
Furthermore, during the earlier cross-examination of Officer Willingham, defense counsel also elicited a response concerning weapons when he questioned Willingham as to whether or not he had been threatened while he was at Lungrin's mobile home.
It was in this context that the prosecutor, at the end of the cross-examination of Officer Berry, informed the court that he had some weapons that he would like marked for identification as he intended to offer them into evidence through his redirect examination of Berry. The weapons were brought into the courtroom and were in the presence of the jury. Defense counsel asked to be heard on a motion outside the presence of the jury.
With the jury out, defense counsel then argued that the weapons, which had been taken from Donald Lungrin's mobile home after the arrest, were irrelevant to the appellants' involvement in the conspiracy and moved that it be required that the weapons be removed from the presence of the jury because it was prejudicial. A motion for a mistrial was also made.
The prosecuting attorney agreed that the weapons were irrelevant. However, he responded that he had not intended to introduce them until the matter of firearms was first brought up by defense counsel.
The trial judge found that the weapons issue was first raised by the defense, but that the weapons were irrelevant and he refused to allow them into evidence. The weapons were ordered removed from the courtroom and the motion for mistrial was overruled. Neither defense counsel asked the court to instruct the jury in regard to the weapons.
Generally, one cannot complain of matters which he first injected into the record. See Lewis v. State, 445 So.2d 1387, 1389 (Miss. 1984); Jackson v. State, 423 So.2d 129, 131 (Miss. 1982); Shelby v. State, 402 So.2d 338, 340 (Miss. 1981); Reddix v. State, 381 So.2d 999, 1009 (Miss. 1980).
It was not unreasonable for the prosecutor to attempt to introduce the weapons into evidence to rebut the inferences sought to be raised by defense counsel throughout the trial: (1) That Agent Willingham was not threatened at the trailer; instead, he was having a good time  smoking marijuana, snorting cocaine, and drinking beer. (2) That there were an unnecessary number of agents involved in the operation and they were all heavily armed. (3) That the agents had unnecessarily killed Ronald Potter.
In McDonald v. State, 285 So.2d 177, 179 (Miss. 1973), we said that, if the incompetent evidence presented to the jury was "inflammatory in character", there is a "presumption that it was harmful." We went on to note that, unless it can be said with confidence that the inflammatory material had no harmful effect upon the jury, we would reverse. Id. at 179. See also Overstreet v. State, 369 So.2d 275 (Miss. *1310 1979). We noted further in McDonald, however, that a conviction would not be reversed in every case because of only one instance of inflammatory and irrelevant material being presented to the jury. 285 So.2d at 179.
In McDonald, we held as follows:
It is error in the course of a trial where one is charged with a criminal offense for the state to inject extraneous and prejudicial matters and lay them before the jury. A combination of such instances may become fatal error and ground for reversal even though the court sustains objections to such questions. This is especially true when after an objection is made and sustained, the prosecution then compounds the error by asking the same question in different words. One of the ingredients of a fair and impartial trial is that an accused person should be tried upon the merits of the case.
285 So.2d at 180.
Here there was a single instance, precipitated by the defense, which was not repeated by the prosecutor. Moreover, in the context in which the weapons were presented to the jury in this case, they were not per se inflammatory, although the trial court held that they were irrelevant. Cf. Hickson v. State, 472 So.2d 379, 384-85 (Miss. 1985) (refusal of trial court to declare mistrial when the state presented a jar containing the "pickled hands" of the victim was reversible error).
The appellants first raised the issue of the weapons. Appellants contended that the weapons were inadmissible and irrelevant, and the trial court agreed. The appellants asked that the weapons be removed from the courtroom and the view of the jury and the trial court granted that request. No doubt the jury would have been instructed to disregard the weapons had the attorneys for the appellants requested such an instruction. However, none was requested. There is no reversible error here.

B.

ASSIGNMENTS BY NATIONS ONLY

WAS THE VERDICT SUPPORTED BY SUFFICIENT EVIDENCE?

WAS NATIONS GUILTY OF AIDING AND ABETTING AND NOT CONSPIRACY?
Because of their close kinship, we discuss these two assignments as one. Procedurally, the question is before us on Nations' motion for judgment notwithstanding the verdict of guilty  j.n.o.v.
We summarize briefly the testimony, presented mostly by the narcotics agents, against Nations. He came to Lungrin's mobile home before the drug deal went down with some money, and he said he had just returned from Florida where he had to "tighten up" a drug dealer who was not paying his debt for drugs. This was in the presence of Officer Willingham. Gray left Lungrin's mobile home with the money that had been brought in by Nations. While both Willingham and Berry were at the mobile home, Nations was sent twice to check out the transfer site. The first time he went alone. When he returned, he said everything was all right. Lungrin told Officer Berry that Nations would show Harris where the drugs were hidden, and then Harris would take Berry to get the drugs. On his second trip, Nations took Harris and showed him the drop site. They returned and reported that everything was fine and the marijuana was on location. Nations was present at the mobile home after the transfer took place and the arrests were made, and he was arrested while there. Earl Harris, who actually did the transfer, also testified that it was Nations who carried him to the dump and told him where the marijuana was.
In his favor, Lungrin testified that Nations had worked for his family's farming operations and occasionally lived with Lungrin, but that Nations did not know anything about the deal that went down that night. Lungrin denied ever telling *1311 Nations about the drop that night, and he supposed that Nations did not know anything about it until the arrest.
That generally summarizes the evidence both for and against Nations that was presented to the jury.
The standard for determining whether the verdict was supported by sufficient evidence is as follows:
Where a defendant has requested a peremptory instruction in a criminal case or after conviction moved for a judgment of acquittal notwithstanding the verdict, the trial judge must consider all of the evidence  not just the evidence which supports the State's case... . The evidence which supports the case of the State must be taken as true... . The State must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence... . If the facts and inferences so considered point in favor of the defendant with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, granting the peremptory instruction or judgment n.o.v. is required. On the other hand, if there is substantial evidence opposed to the request or motion  that is, evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair minded men in the exercise of impartial judgment might reach different conclusions  the request or motion should be denied.
Gavin v. State, 473 So.2d 952, 956 (Miss. 1985) (citations omitted).
Based upon this test and the evidence presented at trial, Nations' verdict was supported by sufficient evidence. Furthermore, this evidence, when taken with our law on what constitutes a conspiracy, makes it inescapable that Nations was guilty of conspiracy and not only aiding and abetting. See Crawford v. State, 133 Miss. 147, 97 So. 534 (1923).
There is no merit to these two assignments of error.

WAS THE VERDICT AGAINST NATIONS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE?
This is, in essence, an allegation that the trial judge was in error in overruling the motion by Nations for a new trial. The standard for determining this issue is as follows:
While the request for a peremptory instruction or the subsequent motion for judgment of acquittal notwithstanding the verdict presents to the trial court a pure question of law, the motion for a new trial is addressed to the trial judge's sound discretion... . The motion invokes Rule 5.16 of our Uniform Criminal Rules of Circuit Court Practice which authorizes the trial judge to grant a new trial if required in the interest of justice or if the verdict is contrary to law or the weight of the evidence. Under our established case law, however, the trial judge should set aside a jury's verdict only when, in the exercise of his sound discretion, he is convinced that the verdict is contrary to the substantial weight of the evidence... .
Gavin, 473 So.2d at 956 (citations omitted).
Based on the law of conspiracies and the facts of this case, there was no abuse of discretion by the trial judge, and there is no merit to this assignment of error.

C.

GRAY'S ASSIGNMENTS OF ERROR

SHOULD GRAY'S CONVICTION BE REVERSED BECAUSE OF THE PREJUDICIAL CLOSING ARGUMENT OF THE PROSECUTOR?
The record reflects that Gray made a contemporaneous objection to only one of the remarks complained of on appeal. It is as follows:
And tonight you are the law in Yazoo County, Mississippi, and please don't forget that.
MR. CONERLY: I object to that, Your Honor. That's an improper *1312 statement and would ask the Court to admonish the jury to disregard it. They have to decide the facts in this case only.
THE COURT: I'll note your objection, Counsel.
Continuing this line of argument, the prosecuting attorney remarked as follows:
MR. MAYFIELD: I'm sorry, ladies and gentlemen. You are the law in Yazoo County tonight. You decide what kind of conduct is going to be tolerated here.
No further objections were made.
Contemporaneous objections to allegedly erroneous comments of the prosecuting attorney in closing arguments must be made or the point is waived. Shavers v. State, 455 So.2d 1299, 1302 (Miss. 1984). See also Baker v. State, 327 So.2d 288, 292-93 (Miss. 1976) (reason for the contemporaneous objection rule is "so that the Court may, when possible, correct the error with proper instructions to the jury.") However, if the argument is so "inflammatory" that the trial judge should have objected on his own motion the point may be considered. Griffin v. State, 292 So.2d 159, 163 (Miss. 1974).
None of the remarks complained of were so "inflammatory" that the trial judge should have acted on his own motion. As to the comment properly objected to, the Court in Clemons v. State, 320 So.2d 368 (Miss. 1975), said the following:
The purpose of the closing argument before a jury is to enlighten the jury. It is the duty of the district attorney to fairly sum up and point out the points presented by the state on which the prosecution contends a verdict of guilty is proper. .. .
"The right of argument contemplates liberal freedom of speech and range of discussion confined only to bounds of logic and reason; and if counsel's argument is within the limits of proper debate it is immaterial whether it is sound or unsound, or whether he employs wit, invective, and illustration therein. Moreover, figurative speech is legitimate if there is evidence on which it may be founded. Exaggerated statements and hasty observations are often made in the heat of debate, which, although not legitimate, are generally disregarded by the court, because in its opinion they are harmless. There are, however, certain well-established limits beyond which counsel is forbidden to go; he must confine himself to the facts introduced in evidence and to the fair and reasonable deductions and conclusions to be drawn therefrom, and to the application of the law, as given by the court, to the facts.
... . [23A C.J.S. Criminal Law, § 1090, at 128-29 (1961).]
Id. at 371 (emphasis added) (citation omitted).
The prosecutor's argument was an incorrect statement of law, but as such it does not exceed the bounds of proper closing argument. The prosecutor did not present evidence that was outside of the record, nor did he appeal to the passions or prejudices of the jury or argue any impermissible factor. There is no merit to this assignment.

DID THE TRIAL COURT ERR IN OVERRULING GRAY'S MOTION TO EXCLUDE THE TESTIMONY OF DONALD LUNGRIN?
This assignment takes us into the troublesome waters of Mississippi Uniform Circuit Court Rules of Criminal Practice and Procedure 4.06.
On October 14, 1983, Gray filed a motion to compel the disclosure of all evidence favorable to him and specifically requested the names of witnesses the state intended to call to testify. This was done pursuant to Uniform Criminal Rules of Circuit Court Rule 4.06 on discovery. Nations issued a subpoena for Lungrin, and Lungrin appears on co-defendant Nations' subpoena list. He does not appear on the subpoena list of the state.
*1313 Gray's attorney went to Parchman and interviewed Lungrin. At the time of this interview, Lungrin was solely a witness for the co-defendant Nations.
On Friday, November 11, 1983, Lungrin was brought to the Yazoo County jail to await the trial scheduled to begin on Tuesday, November 15, 1983. On Sunday, November 13, 1983, Gray's attorney again interviewed Lungrin in the Yazoo County jail. At the time of the interview, Lungrin was still only a witness for the co-defendant Nations. He did not tell Gray's attorney at that time that he had made a deal with the state and intended to testify for the state against Gray.
Some time Monday afternoon, the state prosecutor determined that Gray would testify for the state and some time that afternoon called the office of Gray's attorney and told the secretary there that Lungrin would be called as a state witness. This information never reached Gray's attorney, who was in Yazoo City on Monday afternoon and not at his office or in contact with it.
On Tuesday morning, the first day of the trial, the prosecutor and his assistant informed Gray's counsel that Lungrin would testify for the state. On Wednesday, the second day of the trial, Donald Lungrin was called to testify for the state of Mississippi. Gray objected, and moved for the court not to allow Lungrin to testify because, in response to his motion for discovery requesting the state to furnish names of witnesses, Lungrin's name did not appear on that list. After hearing both counsel, the trial court ruled that Lungrin had been available since Friday, November 11th, and, therefore, the trial court could see no prejudice in allowing Lungrin to testify since counsel had had an opportunity to talk with him. No present opportunity was made available by the trial judge to the attorney for Gray to interview the witness again. The court then overruled Gray's motion for a mistrial, and Lungrin proceeded to testify.
We return to Rule 4.06, Discovery, momentarily. We point out that one element of the rule is as follows:
If, subsequent to compliance with these rules or orders pursuant thereto, a party discovers additional material or information which is subject to disclosure, he shall promptly notify the other party or his counsel of the existence of such additional material, and if the additional material or information is discovered during trial, the court shall also be notified.
The Rule further provides, in its last two paragraphs that,
If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, or enter such other order as it deems just under the circumstances.
Willful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court.
Rule 4.06, as amended October 26, 1982.
A seminal case dealing with guidelines for the application of Rule 4.06 is Justice Robertson's concurring opinion in Box v. State, 437 So.2d 19 (Miss. 1983). Box had requested a list of the state's witnesses along with their addresses and production of physical or tangible evidence. At his trial, the state called a witness whose name had not been disclosed to the defense until late on the evening before the trial began. The state also introduced photographs that were within the scope of the discovery order but had not been disclosed until a few moments before they were produced at trial. Over the objection of the defendant, the witness was allowed to testify and the evidence was presented to the jury. Box neither sought a continuance nor did he ask for a mistrial.
When asked why the disclosure had not been made, the prosecuting attorneys explained that until the evening before the *1314 trial they simply were not aware that they had a statement which indicated to them that the witness could identify Box and, therefore, they did not disclose the information. We reversed. In his specially concurring opinion, Justice Robertson set forth guidelines for use where discoverable but undisclosed evidence is offered by the state. These guidelines are:
First
In cases where the state seeks to offer into evidence that which it ought to have disclosed pursuant to a discovery request but didn't, it is first incumbent upon the defendant to make timely objection. If this be done, the court's initial response should be a directive that the defense be given a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs, etc. The court should not be grudging in this allowance.
Second
If, after examining the evidence involved or interviewing the would-be witness, the defendant is of the opinion that he has been subjected to unfair surprise and that his defense will be prejudiced if the evidence is offered without his having had the opportunity to investigate independently the credibility of the evidence and possible responses thereto, it should then be incumbent upon him to request expressly that the court grant a continuance. In most instances this will necessitate a declaration of a mistrial. [footnote omitted] In any event, and in such a situation and absent unusual circumstances to the contrary, the trial court ought conditionally grant the requested continuance, at which time the matter is checked back to the state.
Third
If the state is of the opinion that for whatever reason it wants to use the witness or the evidence in its case against the defendant, the order for a continuance must stand. At this point, however, the state should have the election. If the state withdraws its offer of the evidence in dispute and agrees to proceed wholly without use of this evidence, the order for continuance should be withdrawn and the trial should proceed as in the ordinary course.
I would hold that these guidelines ought generally be applied in all cases in which the new evidence has not been disclosed to the defendant more than 48 hours prior to the beginning of the trial. There may be cases where it would be appropriate to apply these guidelines where discoverable but unproduced evidence has been disclosed to defendant more than 48 hours before trial.
437 So.2d at 23-24.
In Cabello v. State, 471 So.2d 332 (Miss. 1985), defense counsel moved, after the jury was impaneled, the court to issue an order prohibiting the state from calling a witness on the ground that that witness was not submitted to the defendant according to the rules of discovery until the morning of the trial. The trial court responded as follows:
Well, it does muddy up the water ... however, in view of the history of this case and these charges, this witness having testified ... against his brother about two weeks ago, now we are talking about him testifying against his father; evidently it would not be a complete shock to anyone and Mr. Odom the court will require this witness be brought to you wherever you want him brought to today and give you an opportunity to talk to him if you wish to do so. We will order the sheriff to transport him to any room in the building you request for that purpose.
Id. at 343.
The Supreme Court, speaking through Chief Justice Patterson, said the following:
The court's procedure meets the guidelines set out in the specially concurring opinion complementing the majority opinion in Box v. State, 437 So.2d 19, 22-26 (Miss. 1983), decided after the present case was tried. The first guideline suggests, *1315 "the court's initial response should be a directive that the defense be given a reasonable opportunity to interview the newly discovered witness, ..." 437 So.2d at 23. Here, the defense was given such an opportunity.
The second guideline directs that if the defendant, after having interviewed the would-be witness, feels he has been subjected to unfair surprise, it is incumbent upon the defendant to request a continuance. The record reveals Frank, Sr., made no such request, which would have been in order although the case was tried prior to Box.

Id.
In Henry v. State, 484 So.2d 1012 (Miss. 1986), a clearly discoverable piece of documentary evidence was not provided and was introduced into evidence. The trial courts in Box, Henry, and Gray and Nations allowed the undiscovered evidence or witness before the jury on the theory that no prejudice was shown to the defendant. As Henry points out (page 1013), reliance on the prejudice factor has been effectively superseded by our decisions in Morris v. State, 436 So.2d 1381 (Miss. 1983); Ford v. State, 444 So.2d 841 (Miss. 1984); and Barnes v. State, 471 So.2d 1218 (Miss. 1985). Because of its ultimate importance, we reiterate the language used by Justice Dan Lee, speaking for the Court in Henry:
Our holding here should not be misinterpreted as indicating that failure to make pretrial disclosure requires per se reversal. We have recognized that nondiscovered evidence may be admitted at trial if the party against whom that evidence is offered is given a reasonable opportunity to make adequate accommodation. See, Foster v. State, [484 So.2d 1009], Jones v. State, [481 So.2d 798]; Davis v. State, 472 So.2d 428 (Miss. 1985); Cabello v. State, 471 So.2d 332 (Miss. 1985). See also, Box v. State, 437 So.2d 19, 23-24 (Miss. 1983) (Robertson, J., specially concurring). Such an opportunity was not afforded the appellant in the instant case.
At 1013-1014.
A study of those cases and the rule itself makes clear that Cabello was not reversed because of the action of the trial judge in promptly, when the objection was made, making available to defense counsel the undiscovered witness for interview.
Here, the trial judge concluded that defense counsel had had an opportunity to interview the witness. This overlooks the fact that at the time defense counsel had that interview he was only aware that the witness was to testify for a co-defendant and not aware that he would testify for the state. When he became aware that the witness was a state's witness, he properly objected for the non-disclosure. At that point, it became the duty of the trial judge to give the defense a reasonable opportunity to interview the newly discovered witness. He did not do so. Based on Rule 4.06 and the cases cited, this constitutes reversible error.
The conviction and sentence of CHARLES ALLEN NATIONS is affirmed; the conviction and sentence of NEAL GRAY is reversed and remanded.
AFFIRMED AS TO DEFENDANT NATIONS; REVERSED AND REMANDED AS TO DEFENDANT GRAY.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.
ANDERSON, J., not participating.