439 So.2d 678 (1983)
Maurice GLENN
v.
STATE of Mississippi.
No. 53934.
Supreme Court of Mississippi.
October 19, 1983.
*679 Pauline Shuler, Fraiser, Burgoon & Abraham, Sam N. Fonda, Lott, Sanders, Gwin & Fonda, Greenwood, for appellant.
Bill Allain, Atty. Gen. by Robert D. Findley, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before BROOM, P.J., and DAN M. LEE and PRATHER, JJ.
DAN M. LEE, Justice, for the Court:
In the November, 1981 term of the Leflore County Grand Jury the appellant, Maurice Glenn, was indicted for armed robbery. The indictment charged that Glenn had been previously convicted of two separate armed robberies and was therefore subject to the provisions of the habitual criminal statute, § 99-19-81 Miss. Code Ann. (1972). A jury convicted Glenn on the charge of armed robbery and he was sentenced to serve thirty (30) years in the custody of the Mississippi Department of Corrections. We affirm.
For at least some of the citizens of Greenwood, Mississippi, August 14, 1981, proved to be an exciting day. On that date Maurice Glenn was incarcerated in the Leflore County jail in downtown Greenwood. Somehow Glenn managed to escape by dropping out a second story window. Officer Richard Oakes, a narcotics officer, testified that he was taking the radio out of the police car with another officer, Dennie McAnally, when they heard a man hollering about an escape. Oakes testified that he turned and saw Glenn running away. Oakes and McAnally pursued Glenn to behind a nearby building where Glenn threatened Oakes with a knife. Oakes backed up and allowed Glenn to pass by him as Oakes was unarmed at the time. After allowing Glenn to pass him, Oakes followed at a distance of about fifty (50) feet. Glenn crossed the street and entered a nearby Piggly Wiggly grocery store. Oakes followed Glenn into the store but did not see him immediately upon entering. Oakes then asked the store manager to call the police. The manager handed the phone receiver over the wall of the store's office and began to dial the police but before Oakes was able to speak to anyone at the police department, Glenn entered the office and grabbed a Piggly Wiggly employee, Charlotte Wilson. Glenn put his left arm around Wilson's throat and held a knife to the back of her neck. He ordered Oakes to hang up the phone and get out of the store.
Charlotte Wilson, a bookkeeper for Piggly Wiggly, testified that she was in the Piggly Wiggly office with the store manager, David Wiggins, when Glenn came into the office and grabbed her from behind, putting an arm around her throat and a knife to her neck. She testified that she did not see Glenn take any money but that she heard a "sliding motion" which she attributed to Glenn sliding money off of the office countertop. Glenn forced her to go through the store at knifepoint and out the back exit. He eventually released her when they reached a fence near a railroad track a few blocks away.
Wiggins testified that he was in the store office when Officer Oakes came in. He testified that after the incident was over $206 was missing from the office but that he had not actually seen Glenn take the money. In fact, the sole witness who testified to having actually seen Glenn take the money was Mrs. Charlie Larry, a checker for the Piggly Wiggly. Mrs. Larry testified that as Glenn was getting ready to bring Ms. Wilson out of the office, he stopped and scooped up some money off of the counter and put it in his pocket. Although Mrs. Larry was confused as to which hand Glenn used to pick up the money and whether he continued holding the knife as he did so, she was firm in her testimony that she saw Glenn take the money.
Glenn was arrested a short time after the incident hiding in a utility shed in the *680 neighborhood of the store. Officer Charles Sykes testified that at the time of the arrest he recovered $205.55 from Glenn's pockets.
Prior to trial the trial court granted Glenn's motion for a mental examination. Glenn's attorneys had specifically requested that he be examined at the Region VI Mental Health Center in Greenwood. There he was examined by Dr. Richard Sayner, a psychologist. During its case in chief the state called Dr. Sayner as a witness. Dr. Sayner testified that he saw Glenn for approximately one hour and administered the verbal part of the Wechsler Intelligence Examination and conducted a formal interview designed to test Glenn's function and memory. Dr. Sayner concluded that in his opinion Glenn was competent to stand trial and that at the time of the crime Glenn was able to distinguish between right and wrong.
At no point in the trial did the defense attempt to dispute the fact that Glenn had escaped from jail and held Charlotte Wilson captive at knifepoint. The defense's case consisted primarily of the testimony of several of Glenn's siblings who related that he had been acting strange or crazy ever since a fire that had taken the lives of four of his cousins several years prior. Glenn testified that he held himself responsible for the death of his cousins because the fire was set in an attempt to get back at him. Glenn also testified that he had no memory of the events from the time he jumped out of the jailhouse window until he was captured in the utility shed.
The jury returned a verdict of guilty but stated that they could not agree on imposition of the life sentence under the habitual offenders statute. The judge then sentenced Glenn to serve 30 years without the possibility of parole in the custody of the Mississippi Department of Corrections.
Glenn's first assignment of error is that the verdict of the jury is contrary to the law and the overwhelming weight of the credible evidence. He argues that the state failed to prove all of the elements of the crime of armed robbery. In Crocker v. State, 272 So.2d 664 (Miss. 1973), this Court set forth the three essential elements of the crime of robbery by stating:
It is well settled that the three essential elements of robbery are as follows: (1) felonious intent, (2) force or putting in fear as a means of effectuating the intent, and (3) by that means taking and carrying away the property of another from his person or in his presence. All these elements must occur in point of time. If force is relied upon as a proof of the charge it must be force by which another is deprived of and the offender gains possession of the property. If putting in fear is relied upon, it must be the fear under duress of which the owner parts with possession. Register v. State, 232 Miss. 128, 97 So.2d 919 (1957).
272 So.2d at 665. The proof at trial was sufficient to establish all of these elements.
Glenn next argues that the court erred in refusing to grant him a further and more adequate mental examination. The day before Glenn was set for trial his attorneys requested a continuance and an order for another mental examination. Glenn's argument was that Dr. Sayner was a psychologist rather than a psychiatrist. This argument is closely analogous to that made by the appellant in Greenlee v. State, 437 So.2d 1010 (Miss. 1983). In that case Greenlee also requested a second mental examination because the first had been performed by a psychologist. Noting that the court had available the psychologist's report from the first examination we held in Greenlee that the trial judge had not abused his discretion in refusing to grant a second examination. In the instant case the trial court also had Dr. Sayner's report. We cannot say that the trial judge abused his discretion in refusing to grant a second examination.
Glenn's last assignment of error is that the court erred in granting Instruction S-1 of the state being an instruction attempting to set forth the elements of armed robbery. Instruction S-1 reads:

*681 The Court instructs the Jury that if you believe from the evidence beyond a reasonable doubt that the Defendant, Maurice Glenn, on the date testified about, did unlawfully, wilfully and feloniously place Charlotte Wilson in fear of immediate injury to her person by the exhibition of a deadly weapon, to-wit: a knife or dagger, and he, the said Maurice Glenn, did then and there take and steal $200.00, or any other amount of money or property, the personal property of Piggly Wiggly of Greenwood, Inc., a corporation, from the presence and against the will of Charlotte Wilson, and at that time he, the said Maurice Glenn, had the ability to realize and appreciate the nature and consequences of that act and the ability to distinguish right from wrong, then it is your sworn duty to find the defendant guilty as charged.
Glenn's objection is that the instruction fails to state that the taking must be by the exhibition of a deadly weapon. He argues that the instruction allows the jury to find him guilty if it finds both that he took the money and that he exhibited a deadly weapon rather than requiring that the taking be by means of the exhibition of a deadly weapon. The state argues that the wording "and he, the said Maurice Glenn, did then and there take and steal" sufficiently conveys the causal relationship necessary as an element of the crime. The reading of the other instructions, particularly D-6 and D-8 make it clear that the jury had before them the essential elements of the offense. Both Instructions D-6 and D-8 require the jury to find that the taking of the property was committed by means of violence or by putting another person in fear of immediate injury. Read in conjunction with D-6 and D-8 the phrase in S-1 "did then and there" comes to mean that the taking had to have been by means of force or putting in fear. Because these instructions must be read together we are of the opinion that any defect in S-1 was cured by the granting of D-6 and D-8. Hickombottom v. State, 409 So.2d 1337 (Miss. 1982).
Based on the foregoing, we affirm the verdict of the jury and the sentence of the trial court.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, HAWKINS, PRATHER and ROBERTSON, JJ., concur.
BOWLING, J., not participating.